481 So.2d 820 (1985)
Henry Mack ISOM
v.
STATE of Mississippi.
No. 55741.
Supreme Court of Mississippi.
December 11, 1985.
*821 Lee Calvin Buckley, Holly Springs, for appellant.
Edwin Lloyd Pittman, Atty. Gen., by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
The appeal addresses the trial judge's effort to avert a mistrial by the giving of an additional instruction to a jury deadlocked solely on the issue of defendant's guilt as to a greater or lesser offense. The defendant, Henry Mack Isom, was indicted for the willful, unlawful and felonious murder of Franklin D. Shaw.
After eight hours of deliberation and a special interrogatory issued by the Court, the jury returned a verdict of guilty of manslaughter and Isom was sentenced to serve a term of 18 years in the Mississippi Department of Corrections. Isom appeals and this Court reverses on two of his assignments of error as follows:
(1) The trial court erred in requiring the jury to deliberate for excessive hours;
(2) The trial court erred in giving a special interrogatory after the jury having been sufficiently instructed retired for deliberation.

I.
On July 30, 1983, several people were gathered at the Briar Patch or Colonial Restaurant in Holly Springs, Mississippi. Although accounts at trial differed as to the actual train of events, it seems that as a result of scuffling and shouting of racial slurs between blacks and whites gathered at the restaurant, Frank Shaw suffered a fatal gun shot wound to his chest. The gun was fired by Henry Mack Isom who admitted firing the shot but claimed he merely wanted to scare Shaw.
On the second day of the trial, the jury retired at 3:21 p.m. At 4:30 p.m. the jury asked for definitions to some words, the court declined to elaborate and referred them to their instructions. At 10:38 p.m. when the jury had reached no decision, the court inquired whether the jury would prefer to continue deliberations or resume the following day. In a vote of nine to three a majority voted to continue. At 11:07 p.m. the jury was still undecided. The verdict at that time stated: "We the jury are unable to come to a final conclusion as to a manslaughter, murder or be released in self-defense. We are hung at a vote of ten murder verdicts and two manslaughter verdicts." Receiving this note the judge stated:
The Court: Ladies and gentlemen, have you reached a verdict? Please answer yes or no.
Juror: No, we are undecided.
The Court: Ladies and gentlemen, I am going to submit you a special interrogatory or special question. The note you have given me is not, in my opinion exactly clear. I will write an instruction on the court's own motion and on discretion in this case, and I will ask that you ... I will read it to you and then ask that you retire and give me an answer to this question.
(Special interrogatory prepared by the Court)
The Court: Ladies and gentlemen, I read you this special interrogatory or question: Do you unanimously agree that the defendant is guilty of either murder or manslaughter according to the instructions given and that the killing of Frankie Shaw was not in necessary self-defense according to the instructions? If your answer is "yes," then you are authorized to return a verdict of guilty of manslaughter. The clerk will hand you this instruction. Please return to the jury room. Let the bailiff know when you have an answer to the interrogatory.
At 11:35 p.m. the jury returned to the jury room. At 11:35 p.m. the jury returned to the courtroom with the following verdict:
We the jury find the defendant guilty of manslaughter.
*822 After a polling of the jury, the jurors were dismissed.

II.
Did the trial court err in giving a special interrogatory when the jury had been amply instructed on the law?
Isom asserts that the judge's instruction constitutes reversible plain error under Supreme Court Rule 6(b) which states:
No error not distinctly assigned shall be argued by counsel, except upon request of the court, but the court may, at its option, notice a plain error not assigned or distinctly specified.
In his motion for a new trial, appellant further argues that the special interrogatory "limited the jury's range of verdicts."
The state, however, contends that defense counsel made no contemporaneous objection to the special interrogatory to preserve the issue on appeal. Haynes v. State, 451 So.2d 227 (Miss. 1984). Additionally the state argues that no reversible error resulted in that the trial court's interrogatory obviously inured to the benefit of the defendant since the jury returned a verdict of manslaughter, not murder.
This Court has never confronted the problem where a lower court issued a special interrogatory similar to the one in the case sub judice.
In Sharplin v. State, 330 So.2d 591 (Miss. 1976) this Court held that the mere request and receipt of the jury's numerical division when the jury is still undecided, without reference to guilty or innocence, does not coerce the jury and is not error. This Court then stated:
We believe that the possibility of coercion, if any, lies in the trial judge's conduct and comments after he receives the division, that is, whether the judge merely affords the jury additional time to deliberate or whether he attempts to force a verdict by suggestive or coercive measures.
Id. at 596. See also Pace v. State, 473 So.2d 167 (Miss. 1985).
Additionally this Court in Sharplin proclaimed that the "Allen charge" in any of its various forms should not be given, Allen v. United States (1896), 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), and set forth the following instructions for use by a trial judge when he feels that the jury might reach a verdict:
(1) Please continue your deliberations or
(2) I know that it is possible for honest men and women to have honest different opinions about the facts of a case, but, if it is possible to reconcile your differences of opinion and decide this case, then you should do so.
Accordingly, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.
Id.
A similar situation was addressed in another jurisdiction. In People v. Lewis, 676 P.2d 682 (Colo. 1984) a defendant was convicted of heat of passion manslaughter, though indicted for first degree murder, and the state of Colorado appealed. There the state contested the propriety and form of instruction No. 20 issued to the jury by the court when the jury remained undecided after considerable deliberation. Instruction No. 20 appeared as follows:
You are instructed that if you find that the Defendant Patricia Lewis is guilty of *823 an offense that has been charged within the information, including the lesser included offenses, but entertain a reasonable doubt as to which offense she has committed, then you have the duty to find the defendant Patricia Lewis guilty only of the lesser offense.
Id. at 685.
The jury, in People v. Lewis, after receiving the additional instruction, resumed deliberations and eventually returned a guilty verdict to heat of passion manslaughter. The court there held:
In this case the trial court unduly interfered with the deliberative process of the jurors when it submitted to them Instruction No. 20. The jury note that prompted this instruction merely stated that nine jurors agreed on one verdict and three on another verdict and requested some guidance from the court as to the appropriate procedure to follow in this situation. The court did not determine whether further deliberations might be productive of a verdict, nor did it inquire of the jury about the general nature of the impasse. Before considering any additional instruction, the court should first have asked whether any progress was being made towards reaching a unanimous verdict, what the likelihood was of a verdict being returned upon further deliberations, and whether the deadlock centered on the issue of guilt or innocence or the particular degree of guilt. Only if the jury indicated that further deliberations would be unavailing and that the deadlock related to the level of offense should the court have considered some additional instruction, but not the one given here.
The effect of the challenged instruction was to require those jurors favoring a guilty verdict on a greater inclusive offense to return a guilty verdict on the least serious offense on which one or more jurors agreed, as long as all jurors agreed on the defendant's guilt as to some crime, notwithstanding the fact that further deliberations might well have resolved the nine-three impasse in a manner satisfactory to all the jurors. Instruction No. 20, to this extent, required those jurors favoring a guilty verdict on a greater inclusive offense to surrender their honest convictions solely in the interest of reaching a verdict. ...
[T]he giving of Instruction No. 20 was itself an undue intrusion on the right of the jurors to deliberate without constraining pressures from the court because it was given without the court first determining whether there was some prospect of a unanimous verdict being reached, and, if not, whether the general nature of the deadlock centered on the level of offense rather than the issue of guilt or innocence. (Emphasis added).
Id. at 687.
In the case sub judice, the verdict of the jury stated that the jury was deadlocked. Under Sharplin supra, the conduct of the trial judge following the receipt of the numerical division is controlling. Applying the same reasoning to a jury verdict of a "hung" jury, this Court concludes that the conduct of the trial court after receipt of the verdict is important in determining whether there is a possibility of coercion or whether the conduct is unduly suggestive. The special interrogatory did not inform the jury not to surrender his or her honest conviction as to weight or effect of evidence for the sole purpose of returning a unanimous verdict. In effect it peremptorily directed the jury to return a manslaughter conviction without regard to their personal conviction and to this extent interfered with the deliberative process of the jury.
The coercive effect of the special interrogatory was evidenced by the fact that the interrogatory was given after the jury had deliberated for the equivalent of a full day without agreeing, and the verdict convicting Isom of manslaughter instead of murder was returned within minutes after the special interrogatory was given.
This Court therefore concludes that the trial court's action after receipt of the verdict that the jury was deadlocked forced a *824 verdict of guilty of manslaughter by suggestive or coercive measures.

III.
The appellant here also assigns as error the trial court's requirement of excessive hours of deliberation time.
After a day and a half of hearing the trial of this case, the jury deliberated from 3:21 p.m. until 10:38 p.m. Three jurors expressed a desire to recess deliberation at that time. Nonetheless, the trial court sent them back for further deliberation, and the verdict came at 11:07 p.m. The special interrogatory confined the jury until 11:35 p.m. The physical and mental stamina of the jury in particular, and court in addition, was taxed. Although judicial time and economy are of importance, the endurance of a jury requires consideration. This Court suggests that this is excessive deliberation time. See Grimsley v. Tyner, 454 So.2d 482 (Miss. 1984).
This Court reverses and remands this case for retrial.
REVERSED AND REMANDED.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and HAWKINS, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
PATTERSON, C.J., and ROBERTSON, DAN M. LEE and ANDERSON, JJ., concur to part II by written opinion.
WALKER, P.J., not participating.
ROBERTSON, Justice, concurring:
I concur in today's decision that Henry Mack Isom's conviction and sentence must be vacated and that this case must be remanded for a new trial. I have substantial reservations, however, regarding the handling of the assignment of error regarding the supplemental jury instruction discussed in Section II of the majority opinion. I am even more concerned about the message I fear will be received from this part of the majority opinion.
It is not uncommon that juries after retiring will inquire of the trial judge regarding further or clarifying instruction on the law. These situations are no doubt varied but must be perceived as genuine expressions of doubt by the jurors regarding what under their oaths they must do. That instructions drafted by lawyers should on occasion prove incomprehensible to the lay juror should surprise no one. The job of providing appropriate supplemental instructions is no doubt difficult and hazardous. That it is within the trial judge's responsibility, however, seems to my mind inescapable.
No doubt with the purest of motives, this Court over the years has handed down a series of decisions which have had a substantial chilling effect on the trial judge's discharge of his responsibility to give supplemental instructions. In cases in vacuo correctly decided, we have in effect told the trial judges of this state that once the jury retires they should become mutes. See, e.g., Stubbs v. State, 441 So.2d 1386, 1389 (Miss. 1983); Martin v. State, 415 So.2d 706, 708-09 (Miss. 1982); Carrol v. State, 391 So.2d 1000, 1004 (Miss. 1980); Warren v. State, 336 So.2d 726 (Miss. 1976). I fear that today's decision will increase the reluctance of trial judges to give supplemental instructions.
The point is this: Where, as here, the jury was apparently at a loss as to how it should proceed, I can see no rational reason why we should discourage the trial judges from providing supplemental guidance. The possibility of a mischievous result on the whole seems infinitely greater if the supplemental instruction is not given than where, as here, it is given. I would commend the trial judge in the case at bar for perceiving that it was his responsibility to provide a supplemental instruction in the context of the situation with which he was presented.
To be sure, the responsibility devolving upon trial judges to give supplemental instructions includes the responsibility to see that those instructions are correct on the law. Where the supplemental instructions are given and our review responsibility is invoked, the matter proceeds as in any other case. In the case at bar, I conclude *825 that the supplemental instruction was error, though the error I find differs from that found by the majority.
The supplemental instruction given proceeds on the assumption that manslaughter is a lesser-included offense to murder in fact as well as in law. Instead he should have realized that this is simply another of those areas where what we have declared to be so in law is not necessarily congruent with logic or fact.
To constitute murder a homicide must have been committed with deliberate design, i.e., malice aforethought. Taylor v. State, 452 So.2d 441, 443 (Miss. 1984); Bangren v. State, 196 Miss. 887, 897, 17 So.2d 599, 600 (1944). By way of contrast, the type of manslaughter at issue here requires an affirmative showing of a killing in the heat of passion. Miss. Code Ann. § 97-3-35 (1972); Calvin v. State, 175 Miss. 699, 703, 168 So. 75, 76 (1936); Dye v. State, 127 Miss. 492, 498, 90 So. 180, 181 (1922). The trial judge's premise, if I understand it correctly, is illustrated by an abstract hypothetical. Proof of elements A + B + C = manslaughter. Proof of elements A + B + C + D = murder. Any juror who at 11:07 p.m. had concluded that Isom was guilty of murder must, according to the premise, have concluded that elements A + B + C + D had been proved, hence, the trial judge's supplemental instruction that in this setting the jurors were "authorized to return a verdict of guilty of manslaughter".
The problem, as I view it, is that, in logic and in fact, proof of elements A + B + C = manslaughter while proof of elements A + B + D = murder. Element C equals heat of passion and element D equals malice aforethought. Therefore, the fact that a juror had concluded that Isom was guilty of murder did not necessarily mean that the juror had found element C  heat of passion  to exist in this case. Hence, the fact that one has found the defendant guilty of murder does not necessarily mean that he has found the defendant guilty of manslaughter.
The point was made expressly in Fairchild v. State, 459 So.2d 793 (Miss. 1984). There we held in a capital murder prosecution that a manslaughter instruction should not have been given because, even though the evidence was sufficient to sustain a conviction of capital murder, there was no evidence which would have supported an affirmative finding by the jury that the defendant acted "without malice aforethought and in the heat of passion." 459 So.2d at 802. Other cases making clear the distinction between murder and manslaughter include Cook v. State, 467 So.2d 203, 206-07 (Miss. 1985); Stevens v. State, 458 So.2d 726, 730-31 (Miss. 1984); Murphy v. State, 336 So.2d 213, 217 (Miss. 1976); Jones v. State, 222 Miss. 387, 396, 76 So.2d 201 (1954); Newell v. State, 209 Miss. 653, 667, 48 So.2d 332 (1950); Adams v. State, 175 Miss. 868, 874, 167 So. 59 (1936).
For these reasons there is legal error in the statement that, if the jury agree unanimously that the defendant be guilty "of either murder or manslaughter" that they should be "authorized to return a verdict of guilty of manslaughter". While I wish to do nothing to discourage trial judges from giving supplemental jury instructions in appropriate circumstances, I have concluded that the instruction given in this instance was erroneous and that on this record it appears substantially likely that this erroneous instruction produced the manslaughter verdict. Accordingly, I concur in the majority's reversal.
PATTERSON, C.J., and DAN M. LEE, SULLIVAN and ANDERSON, JJ., join in this opinion.
WALKER, P.J., not participating.