956 So.2d 1044 (2007)
Christopher WILSON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01752-COA.
Court of Appeals of Mississippi.
April 15, 2007.
*1046 David L. Tisdell, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Christopher Wilson was convicted of murder and sentenced to life imprisonment. On appeal, Wilson argues that: (1) the trial court erred in allowing evidence of prior bad acts of the defendant; (2) the trial court failed to apply the Weathersby rule; (3) the verdict was against the overwhelming weight of the evidence; and (4) the elements of murder were not supported by sufficient evidence. We find no error and affirm.

FACTS
¶ 2. Wilson was indicted for the murder of Ulanda Brown. During the trial, Wilson did not take the stand to testify, but a large portion of the evidence of the shooting came from his account of the incident made to police. This account was derived from several different statements Wilson made to Investigator Romelle Matthews.
¶ 3. On June 19, 2004, Wilson and Ulanda Brown were at their home in Clarksdale. A shotgun discharged fatally striking Brown in the side. Wilson told Investigator Matthews that it was an accident that gun discharged and that the shotgun was not supposed to be able to fire because it was broken. When asked exactly what happened, Wilson told Investigator Matthews that he was showing Brown how to use the gun so she would no longer be afraid of it. Wilson stated that this demonstration occurred after they had gotten out of the bed and Brown was getting ready for work. Investigator Matthews testified that Wilson's description of where Brown was physically located when the shotgun discharged was inconsistent with Wilson's other statements. At one point, Wilson told Investigator Matthews that the gun discharged while she was on the bed. He also told Investigator Matthews that she was standing at the dresser combing her hair when the gun discharged.
¶ 4. Investigator Matthews asked Wilson why he loaded the shell into the gun if he was just showing her how use the shotgun. Wilson replied that he did not know and just kept saying it was an accident. When asked why he even had a shotgun, Wilson stated that he had a general fear of people, and he would use it to intimidate others.
¶ 5. Investigator Matthews questioned Wilson about his relationship with Brown. At first Wilson said that they were very happy together. Later, Wilson stated that they had been having problems and that she was thinking about leaving him. Wilson also told Investigator Matthews that he saw the application for an apartment lease on the dresser the morning of the shooting.
¶ 6. In addition, the State offered the testimony of several of Brown's friends and two expert witnesses. Steve Byrd was offered by the State as a firearms expert. Byrd testified that he was unable to get the shotgun to fire in its present condition, but he stated that it could be possible with enough torque to still fire the shotgun. When presented with a hypothetical question, Byrd testified that it could have been possible for Wilson to fire the shotgun and then break it. Dr. Stephen Hayne also testified about the entrance wound that Brown received and her cause of death.
¶ 7. For his defense, Wilson did not testify, but offered two witnesses. Ellis Wilson Barber corroborated Wilson's story *1047 that the shotgun was broken prior to it discharging on June 19th. Barber testified that the shotgun was broken at the time they found it at Wilson's mother's house. Craig Harris, a record producer, also testified that he had received a letter and a demonstration tape from Wilson. Wilson sent these materials in an effort to receive a recording contract from Harris's recording company.
¶ 8. The jury returned a verdict of guilty for the murder of Brown. Wilson's motion for judgment notwithstanding the verdict was denied.

ANALYSIS
I. The trial court erred in allowing in prior bad acts of the defendant
¶ 9. Wilson's first issue concerns the evidence of prior bad acts. Wilson claims that the trial court erred when it admitted evidence of a prior shooting and Wilson's rap lyrics about the prior shooting. Generally, evidence of a crime other than the one for which the accused is being tried is not admissible. Ballenger v. State, 667 So.2d 1242, 1256 (Miss.1995) (citing Duplantis v. State, 644 So.2d 1235, 1246 (Miss.1994)). However, Rule 404(b) of the Mississippi Rules of Evidence allows prior bad acts to be admitted to show intent and absence of mistake, among other things. In addition, the evidence must pass through the filter of Rule 403 of the Mississippi Rules of Evidence. It requires that if the prejudicial effect of the evidence substantially outweighs the probative value, then the evidence should be excluded. M.R.E. 403. "The standard of review regarding the admission or exclusion of evidence is abuse of discretion." Palmer v. State, 939 So.2d 792, 794(¶ 4) (Miss.2006) (citing Jones v. State, 904 So.2d 149, 153(¶ 11) (Miss.2005)).
¶ 10. Did the trial judge abuse his discretion in allowing evidence of prior bad acts for a limited purpose? This question was addressed prior to the trial in a motion in limine. The defense requested that any evidence of a prior shooting of Brown, by Wilson, be excluded from the trial as an inadmissible prior bad act. The State argued that it would offer such evidence to show absence of mistake or accident. The trial judge denied the motion in limine and allowed the evidence of the prior shooting to come in for the limited purpose of absence of mistake or intent. During the trial, when the evidence was presented to the jury, the trial judge instructed the jury that "evidence of the defendant shooting the deceased on a previous occasion may not be considered by you as evidence that he committed the crime with which he is now charged. It may, however, be considered for the limited purpose of showing absence of mistake or accident."
¶ 11. The State cites us to Readus v. State, 272 So.2d 659, 661 (Miss.1973). In Readus, a child of the deceased testified on direct examination that the defendant had previously shot his mother prior to the day of the fatal shooting. Id. The trial court, during cross-examination, held that the testimony of the prior shooting was inadmissible. Id. The defense then made a motion for a new trial, which the trial court denied. Id. The defendant was later convicted of murder. Id. at 659. On appeal, the supreme court held that the evidence of the prior shooting was admissible. Id. at 661. After addressing the relevant case law and noting that the general rule requires the exclusion of prior bad acts, the supreme court stated, "[t]he prior shooting incident in this case is an exception to the general rule and would tend to show the intent of the appellant and absence of accident in the shooting which caused the death of [the victim]." Id.
*1048 ¶ 12. Readus is instructive to us here. In Readus and in this case, the State sought to introduce evidence of a prior shooting of the victim when the defendant was claiming accident as the cause of a later fatal shooting. Also, the probative value of the prior shooting was not substantially outweighed by its prejudicial effect. Here, the trial court even gave the proper limiting instruction when evidence of the prior shooting was introduced. Accordingly, we find that the trial court did not abuse its discretion in allowing evidence of a prior shooting of Brown to be presented to the jury for the limited purpose of showing absence of mistake or accident.
¶ 13. Wilson also argues that evidence of his prior abuse of Brown should have been excluded at trial, but was allowed over his objection. The only objection in the record on this issue was based on hearsay, which was sustained. Since objections must be specific in nature, the issue was never properly brought before the trial court. "In order to preserve an issue for appeal, counsel must object. The failure to object acts as a waiver." Carr v. State, 873 So.2d 991, 1004(¶ 35) (Miss.2004) (citing Oates v. State, 421 So.2d 1025, 1030 (Miss.1982)). Since there was no objection in regard to the evidence of previous abuse, that issue is not properly before us.
¶ 14. The trial court did not commit error in allowing evidence of prior bad acts to be presented to the jury for the limited purpose of determining intent or lack of mistake.
II. The trial court failed to apply the Weathersby Rule
¶ 15. Next, Wilson argues that since he was the only eyewitness to the shooting that his version of the event, if reasonable, must be accepted as true unless substantially contradicted by a credible witness testifying for the State or by physical facts of common knowledge. Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933). The Weathersby rule is a guide to help determine if a defendant is entitled to a directed verdict. Blanks v. State, 547 So.2d 29, 34 (Miss. 1989).
¶ 16. We look to determine whether there was credible evidence that contradicted Wilson's account of the shooting. Wilson stated that the gun discharged when Brown was fixing her hair in front of the dresser. In a separate interview, Wilson provided an inconsistent statement when he stated that the gun discharged when Brown was sitting on the bed brushing her hair. There was also a contradiction in the accompanying physical evidence. First, the statement that Brown was standing when she was shot was contradicted by the testimony of Dr. Stephen Hayne, the State's medical expert. He testified that the shotgun was fired at a forty degree downward angle. If they were standing next to each other, the entry of the gunshot would have been more perpendicular with very little downward angle. Here, the physical evidence suggests that the gunshot occurred while Wilson was standing over her, and not when he was standing next to her while she was at the dresser getting ready for work.
¶ 17. The second statement was also contradicted by the physical evidence. Wilson also stated that Brown was sitting on the bed when the shotgun discharged. While this may be consistent with the angle at which she was shot, no blood appeared on the bed, except for splatters along the bottom of the bed. This contradiction is shown by the pictures of the crime scene introduced at trial and by the responding officers' testimony. It is a reasonable inference that blood spatters would have appeared on the bed if she *1049 were sitting on it at the time the shotgun discharged.
¶ 18. This Court concludes that the evidence presented "materially contradicted" each of Wilson's versions of the event. Turner v. State, 796 So.2d 998, 1002(¶ 14) (Miss.2001). In Turner, the testimony of Dr. Hayne regarding the trajectory of the shotgun blast materially contradicted Turner's version of the events, and the supreme court held as a result that the matter of the defendant's guilt was proper for the jury to consider. Id. Likewise, it was proper for the trial court here to deny a request for a directed verdict in accordance with the Weathersby rule.
III. The verdict was against the overwhelming weight of the evidence
¶ 19. Wilson alleges that the verdict of the jury was against the overwhelming weight of the evidence and a new trial should be granted. This Court will "only disturb a jury verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). To determine if this has occurred, the Court will look at the evidence in a light most favorable to the verdict. Id. If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial. Id.
¶ 20. Viewing the evidence in the light most favorable to the verdict, we cannot say that the verdict is unconscionable. Wilson admitted to police that he shot Brown. He only challenged the finding that it was not an accident. The State, through the friends of Brown, presented evidence that Wilson was very possessive and that Brown was trying to secretly find a different place to live. The day of the shooting, police found an application for an apartment lease on the dresser near where Brown was found. When questioned whether he and Brown were having problems, Wilson stated that they were very happy. Later in the interview, he said that they were having some relationship problems.
¶ 21. These were not the only inconsistent statements that Wilson gave to the police. He also gave inconsistent statements regarding how Brown was shot. At one point, Wilson told police that Brown was sitting on the bed when she was shot, while he also stated that she was standing up when the gun discharged. As mentioned before in the Weathersby analysis above, each of these statements was further contradicted by the physical evidence testified to by Dr. Hayne and the responding officers. Also, Wilson could not explain to police why he loaded the shell into the shotgun when he was merely demonstrating how the shotgun worked. As to Wilson's contention that the shotgun should have never been able to fire, Steve Byrd, the State's firearm expert, testified that it would have been easy for Wilson to have fired the weapon and then struck it against an object to render it inoperable.
¶ 22. After reviewing the evidence, we cannot say that this verdict is so contrary to its weight that allowing it to stand would sanction an unconscionable injustice. Id. Therefore, this issue is without merit.
IV. Whether there is insufficient evidence to support the conviction for murder
¶ 23. Wilson also challenges the sufficiency of the evidence in support of the element of deliberate design. To evaluate whether the evidence is sufficient, this Court must determine if any evidence may "point in favor of the defendant on any element of the offense with sufficient *1050 force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." Edwards v. State, 469 So.2d 68, 70 (Miss.1985) (citing May v. State, 460 So.2d 778, 781 (Miss.1984)) (emphasis added). If reasonable jurors could have reached different conclusions with respect to every element of the offense, the evidence will be considered sufficient. Bush, 895 So.2d at 843(¶ 16) (citing Edwards, 469 So.2d at 70).
¶ 24. Wilson's contention is that the evidence is insufficient to support the element of deliberate design. He does not challenge the fact that he shot Brown. Instead, he claims that the shooting was an accident. Therefore, we will determine if there is evidence sufficient to allow reasonable jurors to have reached different conclusions as to deliberate design.
¶ 25. Wilson was shown to be a very possessive boyfriend through the testimony of Brown's friends. On the day that Brown was shot, the police found an application for an apartment lease on the dresser. Brown's friends testified that they had looked for a separate apartment for Brown without telling Wilson. The physical evidence of the crime scene suggested the shooting occurred in a way different from either of Wilson's recollections. The downward angle of the gunshot wound showed that Brown was shot from above. In addition, Wilson never could explain why he loaded a shell into the shotgun when he was demonstrating how to use the shotgun. Wilson urges this Court that the fact that the gun would not fire when Steve Byrd tested it shows that this was an accident. Byrd stated, when given the hypothetical, that it would have been very easy for Wilson to fire the shotgun and then break it immediately afterward.
¶ 26. From the preceding evidence, a reasonable juror could conclude that Wilson found the application for an apartment lease and became angry. He then went and retrieved the shotgun and loaded it. Then he pointed the shotgun at Brown and fired it. After discharging the shotgun, Wilson then struck the shotgun against an object to make it inoperable. With this evidence, we find that a reasonable juror could have concluded that the State proved all the elements of murder. Bush, 895 So.2d at 844(¶ 17). Therefore, this allegation of error is without merit, and we affirm.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.