# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KP-01239-SCT

*ALBERT JUNIOR CRAFT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/14/2001 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PRO SE |
| | TOM SUMRALL |
| ATTORNEY FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, Jr. |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/24/2002 |
| MOTION FOR REHEARING FILED: | 10/31/2002 |
| MANDATE ISSUED: | |

## BEFORE McRAE, P.J., EASLEY AND CARLSON, JJ.

### EASLEY, JUSTICE, FOR THE COURT:

## PROCEDURAL HISTORY

¶1. Albert Junior Craft (Craft) was convicted in the Circuit Court of the First Judicial District of Harrison County of the crimes of (1) aggravated assault with a deadly weapon against Raymond Hubbard (Hubbard), a fireman, for shooting Hubbard and (2) possession of a firearm by a felon. He was thereafter sentenced as a habitual offender, to serve concurrent terms of twenty years and three years, respectively, day for day without parole, in the custody of the Mississippi Department of Corrections. The trial court denied Craft's motion for a new trial. Feeling aggrieved by the judgments thus entered against him, Craft appealed. His counsel, Tom Sumrall (Sumrall), however, believing that the appeal is frivolous, filed a brief in compliance with the *Turner v. State*, 818 So.2d 1186 (Miss. 2001). Craft has also filed his own pro se supplemental brief.

## FACTS

¶2. Craft's attorney, Sumrall, represents to this Court that in his opinion the trial record does not support an appeal. Sumrall sets out that he thoroughly scoured the record three times and considered all possible issues that might be raised on appeal without finding an issue for appeal. Sumrall filed a notice of appeal to this Court on August 6, 2001, and subsequently filed a brief setting out an abstract of the trial record indicating the testimony of all the State's witnesses insofar as they relate to the elements of the crime. Sumrall found nothing at all in the record to support an arguable basis for an appeal. Sumrall notified Craft of his rights and his right to file a pro se supplemental brief.

¶3. The facts set out by Sumrall in his brief are as follows:

> The first witness called by the state was [Hubbard], the victim. Hubbard testified that he knew Craft and he identified him in the courtroom. Hubbard said that on December 12, 1999, there was a cookout and present at the cookout was Craft, Nelson Craft [Nelson] ([Craft's] brother), Edwina Craft [Edwina] (Craft's ex-wife), another man whom he did not name, Terry Brown [Brown] and Tracy Marshall [Marshall]. Hubbard stated that Craft asked him if Derrick was messing with his old lady and Hubbard replied that Derrick didn't know his old lady. Hubbard continued saying that before he could ever sit down good, he was laying on the ground. He said that the reason he was laying on the ground is that Craft shot him with a .38. He shot him in the chest on the left side a little beneath the collarbone and while he was still on the floor, Craft shot him in the back. Craft then put the pistol to the head of [Brown] and Hubbard asked Craft why he shot him. Craft's response to that question was "He told me to squash it." Hubbard further stated that [Nelson] and [Brown] took him to the hospital. In relation to Hubbard's testimony, the state offered into evidence a Nautica shirt that Hubbard was wearing at the time of the shooting. The shirt has tears in it and blood on it that were not present at the time of shooting.

> [Brown] was the second witness that the state called and Brown stated that he knew Craft and identified him in the courtroom. Brown said that he saw Craft on December 12, 1999, at a baby shower. According to Brown, Craft stood up and asked Hub [Hubbard] "was his cousin messing with his wife?" and Hub stood up and said "no, he wasn't." Brown continued that Craft shot Hubbard in the chest and then he shot him again in the back after Hubbard had fallen to the floor. Brown said that Craft then put the gun to his head. It was a .38 handgun. He further stated that he and [Nelson] took Hubbard to the hospital.

> The next witness called by the state was [Edwina], [Craft's ex-wife]. According to her, she was in attendance at the party on December 12, 1999, at [Marshall's]. Craft asked Hubbard if his cousin was [f-----g] his wife?". Then Craft shot Hubbard.

> The next witness to testify on behalf on the state was [Nelson]. Craft's brother. He said that his brother ... came to his house for a baby shower in December of 1999. He said when he arrived he was disturbed. He thought that Hubbard and Edwina were having a fling or something like that. He continued and said that [Craft] stood up and said to Hubbard "I heard you been messing with my woman," and then pulled the gun out and shot him. He put the gun to the head of [Brown]. [Nelson] stated that he got his brother, [Craft] off Terry and then Craft shot [Hubbard] again. He said that he and [Brown] took [Hubbard] to the hospital.

The next witness called by the state was [Marshall] who testified that she was present at the shooting incident. She was in the kitchen, heard a gunshot and ran out the back door. She stated that [Nelson], [Craft], [Hubbard] and [Brown] were in the living room at that time. She did not see anything she only heard the shots.

Keith Gardner [Gardner] was the next witness to testify on behalf on the state. Gardner stated that he had known Craft since they were kids and he identified Craft in the [c]ourtroom. He stated that he saw Craft on December 12, 1999, at his home late in the evening. Craft told him he was in trouble or something. The state called Ray Miller [Miller], a deputy sheriff with the Harrison County Sheriff's Department. Miller heard a dispatch broadcast that Craft was wanted on an [a]ggravated [a]ssault charge. He spotted Craft in the north Gulfport area. When he passed, the subject that matched dressing of Craft ... saw him and stepped in the back door of a residence. He drove by and called for backup and approached the residence. Officers stopped Craft as he was running out the front door of the house. Miller arrested him. The next witness called by the state was Eric Baker [Baker], a registered nurse working in the emergency room at Gulfport Memorial Hospital. Baker stated that he was on duty on December 12, 1999, and he saw Hubbard in the emergency room. He had two gunshot wounds and he described the treatment given Hubbard and stated that one bullet was in the area of the shoulder and one was lower down in the chest cavity, "kind of in the kidney area".

The last witness called by the state was Joey Tracy [Tracy], a Harrison County Sheriff's Deputy, who was an investigator. Tracy responded to the crime scene apartments on 34th Avenue in Gulfport to document the crime scene. He took numerous photographs using a 35mm camera. Tracy authenticated Exhibits 1, 2, 3 and 4, which the state had marked for identification and they were admitted into evidence through Tracy's testimony.

It should be noticed that counsel for Craft made numerous objections throughout the trial, some of which were overruled but in the opinion of counsel would not be of such magnitude to warrant reversal of the trial. It should be further noted that although several witnesses testified that the victim was shot with a .38 caliber weapon, no weapon was ever produced at the trial. However, counsel does not believe that this is a significant issue in this appeal. The cases are numerous in which convictions are affirmed and also in which the weapon, which was the instrument of the crime, was never produced in Court.

At the conclusion of the state's case, counsel for defendant made a Motion for a Directed Verdict which was overruled.

The defense announced that it would not call any witnesses and that the defendant did not desire to testify. The usual questioning by the Court to insure that Craft had been advised properly of his 5th Amendment rights took place.

The Court: Have you visited with the defendant concerning his right to testify and his right not to testify?

[Sumrall]: Yes, sir. I have advised him. We talked about that on several occasions and I advised Mr. Craft that under the 5th Amendment that he has a right to testify or not to testify and that is strictly his decision and not mine. I can give him advice on him. But it's strictly his decision and he was indicated to me every time that I brought up the subject that he is not going to testify.

The Court [questioned] Craft [as follows]:

[The Court]: You heard what your attorney said. Do you agree with what he said as to y'all's discussion about this?

[Craft]: Yes, sir, I agree.

[The Court]: So I take it then it's your own choice not to testify.

[Craft]: Yes, sir.

¶4. While Craft makes many unsupported and unconnected claims and allegations in his pro se brief, he attempts to raise the following issues on appeal:

**I. Whether Craft was denied his constitutional right to a speedy trial.**

**II. Whether the trial court properly amended the indictment to charge him as a habitual offender.**

<u>DISCUSSION</u>

<u>I. Speedy Trial</u>

¶5. In his pro se appeal, Craft argues that he was denied his constitutional right to a speedy trial. Craft filed various motions and demands that he receive a speedy trial, but no motion was ever called up to obtain a pre-trial ruling from the trial court. Craft did attempt during his sentencing phase to raise his motion for speedy trial, having already been found guilty. The trial court determined that waiting until the sentencing phase, having already gone to trial, to pursue the motion for speedy trial rendered the motion moot. Craft was arraigned on September 20, 2000, and the trial began on June 12, 2001, 265 days later. Craft does not set forth any specific prejudice or problems that resulted from the incarceration. "Alleged speedy trial violations are examined and determined on a case-by-case basis due to the factual specifics of each action." ***Brengettcy v. State***, 794 So.2d 987, 991 (Miss. 2001). *See also* ***Sharp v. State***, 786 So.2d 372, 377 (Miss. 2001). The Court has "not set a specific length of time as being per se unconstitutional" in reviewing a constitutional challenge for lack of speedy trial. ***Brengettcy***, 794 So.2d at 992.

¶6. This Court has recently examined the constitutional right to a speedy trial and stated that pursuant to Miss. Code Ann. § 99-17-1 (2000), the 270 day speedy trial rule provides:

Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned. "The right to a speedy trial is guaranteed by the sixth and fourteenth amendments to the United States Constitution and Art. 3, § 26 of the Mississippi Constitution of 1890." ***Watts. v. State***, 733 So.2d 214, 235 (Miss. 1999). 'The constitutional right to speedy trial attaches at the time when the defendant is first effectively accused of the offense.' ***Gray v. State***, 728 So.2d 36, 47-48 (Miss. 1998) (citing ***Perry v. State***, 419 So.2d 194, 198 (Miss. 1982)). This Court has held this to begin at the "'time of a formal indictment or information or else the actual restraints imposed by arrest and holding to a criminal charge.'" ***Perry v. State***, 637 So.2d 871, 874 (Miss 1994) (quoting ***Lightsey v. State***, 493 So.2d 375, 378 (Miss. 1986)).

*Mitchell v. State*, 792 So.2d 192, 210 (Miss. 2001).

¶7. When a denial of the constitutional right to a speedy trial is claimed, the four-part balancing test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), must be employed. ***Mitchell v. State***, 572 So.2d 865, 870 (Miss. 1990); ***Kinzey v. State***, 498 So.2d 814 (Miss. 1986). In *Taylor v. State*, 672 So.2d 1246, 1258 (Miss. 1996), this Court held:

> In analyzing the constitutional right to a speedy trial, we must again visit the familiar realm of ***Barker v. Wingo***, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972), and apply the four factors to the present case. The four ***Barker*** factors, to be balanced in light of surrounding circumstances, are: (1) length of delay; (2) reason for delay; (3) defendant's assertion of the right to a speedy trial; and, (4) prejudice to the defendant resulting from the delay.

¶8. The first step in this analysis is for Craft to satisfy the presumptively prejudicial element under ***Barker v. Wingo***, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972); ***Smith v. State***, 550 So.2d 406, 408 (Miss. 1989). "The delay is the triggering mechanism" and "must be presumptively prejudicial" or the analysis is halted. *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 2693 120 L.Ed.2d 520 (1992); ***Jaco v. State***, 574 So.2d 625, 630 (Miss. 1990).

¶9. Once the trial court has determined whether the defendant's incarceration is presumptively prejudicial to the defendant, the trial court must then examine the four factors laid out in ***Barker***. The United States Supreme Court stated in ***Barker*** that, "until there is some delay which is presumptively prejudicial, there is not necessity for inquiry into the other factors that go into the balance." ***Barker***, 407 U.S. at 530, 92 S.Ct. at 2191.

¶10. We find that Craft's claim fails on two grounds. First, Craft never pursued his motion for a speedy trial until the trial court began the sentencing phase. The trial court determined that the motion was moot since the trial had already been concluded. This Court has held that a party is obligated to seek a ruling on an objection or motion. A party making a motion must "follow up that action by bringing it to the attention of the judge and requesting a hearing upon it." ***Sharplin v. State***, 357 So.2d 940, 942 (Miss. 1978). The movant bears the responsibility to "obtain a ruling from the court on motions filed by him and failure to do so constitutes a waiver of same." ***Martin v. State***, 354 So.2d 1114, 1119 (Miss. 1978).

¶11. In ***Copeland v. State***, 423 So.2d 1333, 1335 (Miss. 1982), this Court reviewed the appellant's argument on appeal that his constitutional rights were violated by a preindictment delay. This Court stated as follows:

> This question is not before us because the record reveals that no objection or motion was presented to the trial court which would have alerted the judge to the fact that the delay may have prejudiced the appellant's right and which, more importantly, would have allowed the state an opportunity to justify the delay. We steadfastly refuse to depart from our rule that, we will not consider an error raised for the first time on appeal, except in exceptional cases. *See* ***Brooks v. State***, 209 Miss. 150, 46 So.2d 94 (1950). Such a rule is founded, in part, on the fair assumption that an accused, in the face of incarceration, will make and preserve all objections available to him. The rule is further supported by our hesitancy to place a trial judge in error on a matter not presented to him for decision. *See* ***Ponder v. State***, 335 So.2d 885 (Miss. 1976).

¶12. In the case sub judice, Craft is conclusively barred from raising this issue on appeal since he never presented the speedy trial issue below in a timely manner to secure a ruling from the trial court.

¶13. Second, the record reflects that Craft had multiple changes in the attorneys representing him. The record indicates that Craft had been represented by court-appointed counsel, Kay L. Wilkerson, then by voluntary contract criminal defender, Felicia Dunn-Cooper Burkes (Burkes), and then by court-appointed counsel Sumrall. The record reflects that Craft claimed he was not satisfied with the service of any of the listed attorneys. Notations in the record reflect that Craft had problems with every attorney the trial court provided for him.

¶14. While Craft did not timely bring his motion for speedy trial in order for the trial court to conduct a hearing, the fact that Craft had at least three different attorneys appointed to represent him cannot be ignored in considering Craft's claim that he did not receive a speedy trial.

¶15. This Court has held that "[d]elays associated with the switching of defense counsel are beyond the control of the State, and therefore, should be charged to the defendant." ***Taylor v. State***, 672 So.2d at 1259. *See **Wiley v. State***, 582 So.2d 1008, 1012 (Miss. 1991).

¶16. Therefore, this Court finds that this issue is wholly without merit.

## II. Habitual Offender Status

¶17. On the State's motion, the trial court amended the indictment to reflect that Craft was a habitual offender pursuant to Miss. Code Ann. § 99-19-81 (2000). The State's motion stated:

> On August 12, 1985, he, the said ALBERT JUNIOR CRAFT, was convicted in the Circuit Court of Harrison County, Mississippi, First Judicial District, in Cause Number 20,336 of the felony of Burglary of a Dwelling, and, on August 12, 1985, in said [c]ourt, was sentenced to a term of [t]en (10) years in the custody of the Mississippi Department of Corrections; and,

> On October 24, 1985, he, the said ALBERT JUNIOR CRAFT, was convicted in the Circuit Court of Harrison County, Mississippi, First Judicial District, in Cause Number 20,623 of the felony of Grand Larceny, and, on October 24, 1985, in said [c]ourt was sentenced to a term of [f]our (4) years in the custody of the Mississippi Department of Corrections, and on December 30, 1986, by [o]rder Nunc Pro Tunc was again sentenced to term of [f]our (4) years in the custody of the Mississippi Department of Corrections; and against the peace and dignity of the State of Mississippi.

> This information was not available to timely present to Grand Jury, accordingly this motion is tendered in the interest of [j]ustice.

¶18. The order granting the amendment was executed on June 13, 2001. When the State's motion to amend the indictment was taken up for consideration by the trial court, the record reflects the following exchange:

> The Court: We've got those two motions pending. I've done some research on the amendment, and the only thing I had to do was determine whether or not there's been a subsequent case to overrule the one that says they can amend the indictment to reflect the habitual portion.

Do you want to articulate the grounds upon which you object to the amendment?

Defense: No, sir. I'd just like for the record to reflect my objection.

The Court: Okay. Well, I'll overrule it, and it will be an amendment, and if the jury should find him guilty ... will conduct a habitual offender hearing to determine whether or not he is an habitual offender, and if so, impose the appropriate penalty. Anything else?

State: Yes, sir. I've got an order.

The Court: You probably need to give me an order to that effect. Mr. Sumrall, you've had a chance to look at it. I'm not asking you whether you agree to it or not, but in form it seems to be appropriate.

Defense: Yes, sir.

The Court: All right. The [c]ourt has signed that. We'll wait until we hear from the jury ...

¶19. During the sentencing phase, the trial court proceeded with the hearing as to habitual offender status. The record reflects the following exchange:

The Court: All right, then, on the issue of determining the status as to whether he's a habitual offender, is the state ready to proceed?

State: Yes, sir, we are.

The Court: Mr. Sumrall, are you ready?

Defense: Yes, sir.

State: We would offer as the state's next exhibit a certified copy of the order, and it's styled order nunc pro tunc in Cause Number 20,623 in which Albert Craft was adjudged guilty of grand larceny, and he was actually sentenced on October 24 of 1985, but the order apparently said that the sentence was to be consecutive.

The order nunc pro tunc was entered December 30 of 1986 correcting that to show that the sentence was to run concurrently with the sentence in Cause Number 20,336. That was the order that was submitted as State's Exhibit 6, and he was sentenced to four years on a charge of grand larceny in Cause Number 20,623.

The Court: You don't have the one in '85?

State: Judge, I do not. It is on the records of this court, but this order in fact recites the dates and recites what the sentencing was, and it was left open for some post-plea motions and that sort of thing.

That is in fact in the order.

The Court: All right. Any objection?

Defense: No, sir.

The Court: Let it be marked and introduced into evidence.

(STATE'S EXHIBIT 7 IN EVIDENCE)

State: With that along with State's 6 would be the two prior convictions reflecting the habitual status of this defendant.

The Court: And you rest?

State: Yes, sir.

The Court: Mr. Sumrall, you have any proof?

Defense: No, sir.

The Court: Nothing in direct?

Defense: No, sir.

The Court: All right. In view of the certified copies and in view of the fact that the Court takes judicial notice of all the minute entries in the First Judicial District of the Circuit Court of Harrison County, the Court finds beyond a reasonable doubt that the defendant has been twice previously convicted of felonies arising out of separate incidence for which he was sentenced to a year or more.

¶20. On appeal, Craft now argues for the first time that his "defense was unfairly surprised" by the amendment, even though, the record reflects otherwise. Craft never offered the trial court any evidence to show surprise from the State's attempt to charge him as a habitual offender. Furthermore, Craft has failed to show how his defense was adversely affected by the amendment to the indictment. In fact, he did not even allege that his defense suffered. We find that the amendment was proper. *See* URCCC 7.09;[1] *Adams v. State*, 772 So.2d 1010, 1019-21 (Miss. 2000).

¶21. Accordingly, Craft's second issue is without merit.

## **CONCLUSION**

¶22. For the foregoing reasons, the judgment of the Harrison County Circuit Court is affirmed.

¶23. **COUNT I: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF UNLAWFUL POSSESSION OF FIREARM OR WEAPON BY A FELON AND SENTENCE OF THREE (3) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. EACH COUNT SHALL RUN CONCURRENTLY FOR A TOTAL OF TWENTY-THREE (23) YEARS TO SERVE, SAID SENTENCE BEING WITHOUT BENEFIT OF PAROLE OR PROBATION**.

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR.**

1. URCCC 7.09 states as follows:

All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as an habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement (e.g., driving under the influence, Miss. Code Ann. § 63-11-30). Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.