997 So.2d 248 (2008)
John Peter MUISE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00553-COA.
Court of Appeals of Mississippi.
December 16, 2008.
*249 Glenn F. Rishel, Leslie S. Lee, Jackson, Justin Taylor Cook, John Wilson Eaton, attorneys for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before KING, C.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. After a trial in the Circuit Court of Harrison County, John Peter Muise was found guilty of murder and sentenced to life in the custody of the Mississippi Department of Corrections. Muise appeals, arguing that: (1) his speedy trial rights were violated by a four-hundred-and-ninety-six-day delay in bringing him to trial, and (2) the trial court's denial of his motion for a continuance effectively denied him his constitutional right to effective assistance of counsel.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Muise worked with Jeremy Magrette and had socialized on several occasions with Magrette and his wife, Jamie Little. At approximately 9:20 p.m. on the night of February 1, 2006, Muise and Michael Fladland went to Magrette and Little's trailer home in D'Iberville, Mississippi in order to collect a $150 debt. Muise drove the pair in his white, extended-cab truck.
¶ 4. Magrette and Little were lying on the couch in the living room of their trailer watching a movie. The couch was located next to the front door. They heard a loud sound outside and Magrette opened the door. Little stayed on the couch. Little heard a voice she knew to be Muise's ask, "Do you have my money?"; Magrette replied, "no, but I'll have it this Friday." Then, Muise bounded up the three front steps of the trailer to the front porch; Magrette said "man we don't have to do it like this." Muise fired four shots at Magrette, who clutched his abdomen and fell into the doorway. Little pulled the blanket *250 up to her eyes and said, "Please, John, no." Little testified that she clearly saw Muise in the doorway, and he was wearing a red baseball cap and a jacket.
¶ 5. Little went outside looking for help; a neighbor spotted her. Both Little and the neighbor saw the white, extended-cab truck return to the trailer and saw the man in the red hat exit the driver's side; he went back inside the trailer and fired two more shots. One of these shots was fired point-blank at Magrette's head. Muise drove away, but the police stopped and arrested him minutes later, finding the gun in the middle console of the truck. Fladland was riding in the passenger seat of the truck; he was also arrested. Little identified Muise as the shooter from a photographic lineup that night.
¶ 6. Muise was indicted for murder, and Fladland was indicted as an accessory before the fact to murder. At Muise's trial, Muise testified that Fladland was the shooter. Muise testified that he drove Fladland to the trailer and waited while Fladland went inside. He said he knew Fladland had a gun with him, but he was unaware that Fladland had left the truck with it. Muise stated that he heard gunshots; then Fladland jumped into the truck and said, "let's go." Muise testified he was disoriented by the shots fired and inadvertently drove around the trailer park's loop and back to Magrette's trailer. Muise said that when he realized he was back at the trailer, he parked, got out, and checked on Magrette. When he saw that Magrette had been shot, he got back into the truck. Muise stated that as he began to drive away, Fladland fired two shots out of the truck's window.
¶ 7. The jury found Muise guilty of murder.

LAW AND ANALYSIS
I. WHETHER MUISE'S SPEEDY TRIAL RIGHTS WERE VIOLATED BY A FOUR-HUNDRED-AND-NINETY-SIX-DAY DELAY IN BRINGING HIM TO TRIAL.
¶ 8. Muise was arrested on February 1, 2006, the date of the crime, and he remained incarcerated until his trial on June 12, 2007. Muise contends that this four-hundred-and ninety-six-day delay violated his constitutional right to a speedy trial. The constitutional speedy trial right attaches at the time the defendant is effectively accused, such as when the defendant is arrested and held to a criminal charge. Perry v. State, 637 So.2d 871, 874 (Miss. 1994); Noe v. State, 616 So.2d 298, 300 (Miss.1993). This Court applies the four-part balancing test from Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to potential speedy trial claims. Flora v. State, 925 So.2d 797, 815(¶ 60) (Miss.2006). The four factors to be considered are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the speedy trial right, and (4) prejudice to the defendant. Id. A delay of over eight months is presumptively prejudicial and triggers a balancing of the other three factors. Murray v. State, 967 So.2d 1222, 1230(¶ 23) (Miss.2007). A presumptively prejudicial delay places the burden on the State to "produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of the reasons." Jenkins v. State, 947 So.2d 270, 276-77(¶ 16) (Miss.2006). We look to the totality of the circumstances in determining whether there was a speedy trial violation. Jefferson v. State, 818 So.2d 1099, 1106(¶ 11) (Miss.2002).
¶ 9. The following timeline is helpful to understanding the progression of Muise's case:
February 1, 2006  Muise was arrested.
February 3, 2006  Muise had an initial appearance in court.

*251 April 27, 2006  Muise filed his first demand for a speedy trial through his appointed counsel, William W. Dreher, Jr.
October 12, 2006  Muise, pro se, filed a second demand for a speedy trial.
November 7, 2006  Muise, pro se, filed a motion to dismiss the murder charge for a failure to provide a fast and speedy trial.
November 14, 2006  Muise was indicted for murder.
November 29, 2006  The trial court entered a scheduling order providing for the arraignment and plea to be conducted in February 2007.
January 25, 2007  Muise filed a motion for appointment of counsel.
February 1, 2007  The public defender's office was appointed to represent Muise.
March 16, 2007  Muise received notice of the appointment of Alvin Chase to defend him and that his trial was set for June 11, 2007.
April 9, 2007  Muise, pro se, filed a petition for a writ of mandamus with the Mississippi Supreme Court to compel the Harrison County District Attorney's Office to dismiss the charges due to the failure to provide a fast and speedy trial. Muise attached his prior demands for a speedy trial and his motion to dismiss. Muise stated that he had never spoken to his defense counsel.
April 20, 2007  Muise waived arraignment and entered a plea of not guilty. Also, Chase informed Muise he no longer represented him as of that date and that Muise's file had been forwarded to the public defender's office.
May 2, 2007  The supreme court dismissed Muise's petition for a writ of mandamus on the ground that he had appointed counsel who could pursue his speedy trial claims.
May 3, 2007  The Harrison County Public Defender's Office obtained Muise's file. There was some confusion about a possible conflict of interest concerning the office's prior representation of Fladland.
May 30, 2007  The conflict of interest issue was resolved; the public defender's office kept Muise's case, and Muise's new defense counsel contacted him for the first time.
June 5, 2007  A subpoena for Fladland was issued.
June 11, 2007  Muise moved for a continuance to secure the testimony of absent witnesses and to further prepare for trial.
June 12, 2007  Muise's motion for a continuance was denied, and he went to trial.
¶ 10. The record reflects that the trial court never ruled on Muise's motion to dismiss for the lack of a speedy trial. Muise did not raise the motion at the pretrial motion hearing. In Dora v. State, 986 So.2d 917, 925(¶ 18) (Miss.2008), the supreme court found that Dora had waived his ability to contest the denial of a speedy trial on appeal because he never raised the issue in the trial court. In this case, Muise did make a written motion to dismiss on speedy trial grounds. However, he never brought that motion on for a hearing. The supreme court has held that a defendant who has made a motion demanding a speedy trial has a duty to seek a ruling on the motion. Craft v. State, 832 So.2d 467, 471(¶ 10) (Miss.2002). The court stated: "a party is obligated to seek a ruling on an objection or motion. A party making a motion must `follow up that action by bringing it to the attention of the judge and requesting a hearing upon it.'" Id. (quoting Sharplin v. State, *252 357 So.2d 940, 942 (Miss.1978)). Thus, though a defendant has made a written speedy trial motion, the defendant's failure to bring the motion to the attention of the trial court and request a hearing results in a waiver of the issue for appeal. In this case, though Muise moved to dismiss the case on speedy trial grounds, he never brought the motion to the attention of the trial court, and he never obtained specific findings from the trial court on whether or not he was deprived of a speedy trial under the four-factor Barker analysis. Therefore, Muise is in the position of raising this issue for the first time on appeal, and this issue is procedurally barred.
¶ 11. Although this issue is procedurally barred, the constitutional right to a speedy trial is a fundamental right, and this issue may be decided by this Court if it views it as plain error. Dora, 986 So.2d at 924-25(¶ 17) (quoting Sanders v. State, 678 So.2d 663, 670 (Miss.1996)); see Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In order to determine whether plain-error review is applicable, we must ascertain "whether an `error of the trial court has impacted upon a fundamental right[,]' ... and is `so fundamental that it generates a miscarriage of justice[.]'" Id. at 925(¶ 19) (citation omitted). If these requisites for plain-error review are not unequivocally satisfied, the "appellate courts are loath to address issues not presented to the trial court." Id. We now review the record, with reference to Barker's four-part balancing test, to determine whether Muise's speedy trial claim evinces an error so fundamental that it generates a miscarriage of justice. This requires a discussion of the merits of the claim that are apparent from the record.

1. Length of the Delay
¶ 12. As the four-hundred-and-ninety-six-day delay between Muise's arrest and his trial was more than eight months, the delay was presumptively prejudicial. Murray, 967 So.2d at 1230(¶ 23).

2. Reason for the Delay
¶ 13. Not all reasons for a delay in bringing an accused to trial are cause for dismissal of the charge on speedy trial grounds. Rather, different weights are assigned to different reasons for a delay. Birkley v. State, 750 So.2d 1245, 1250(¶ 16) (Miss.1999) (citing Barker, 407 U.S. at 531, 92 S.Ct. 2182). For example, a missing witness is a valid reason that will justify an appropriate delay, but negligence or docket congestion is weighed only slightly against the State. Id. However, a deliberate attempt to sabotage the defense by delaying the trial will be weighed very heavily against the State. Id. Conversely, a delay attributable to the defense is not counted against the State, such as a delay caused by the grant of the defendant's motion for a continuance. Hersick v. State, 904 So.2d 116, 121(¶ 8) (Miss.2004).
¶ 14. The record reflects no reason for the delay in bringing Muise to trial. In its brief, the State offers speculation that Muise's trial was delayed due to problems with the administration of justice in Harrison County that occurred in the aftermath of Hurricane Katrina. However, Muise was arrested five months after the hurricane, and there is nothing in the record to assure this Court that hurricane-related problems in fact caused the delay. Conversely, nothing in the record suggests that any part of the delay was attributable to Muise, who appears to have diligently asserted his right to a speedy trial by making two speedy trial demands and eventually moving to dismiss the charges for the lack of a speedy trial. But because Muise failed to raise this issue in the trial court, the State lacked an opportunity to explain the delay, and we are unable to know how much weight would have been attributable to the State's reason.

*253 3. Muise's Assertion of His Right to a Speedy Trial

¶ 15. Though the State has the burden to provide a speedy trial, a defendant attains more points under this factor of the Barker test if he has asserted his right to a speedy trial. Perry, 637 So.2d at 875. "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 532, 92 S.Ct. 2182. Muise effectively asserted his speedy trial right by making two separate demands for a speedy trial. See Perry, 637 So.2d at 875.

4. Prejudice to Muise
¶ 16. A defendant is not required to affirmatively show prejudice in order to establish the denial of his right to a speedy trial. Murray, 967 So.2d at 1232(¶ 30). However, an absence of prejudice causes this factor to weigh against the defendant. Id. There are two aspects of prejudice under Barker: "(1) actual prejudice to the accused in defending his case, and (2) interference with the defendant's liberty." Id. (quoting Brengettcy v. State, 794 So.2d 987, 994(¶ 20) (Miss.2001)). In assessing whether the defendant suffered prejudice, we look to the three interests the speedy trial right was designed to protect: "[(i)] to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Jenkins, 947 So.2d at 277(¶ 21) (quoting Mitchell v. State, 792 So.2d 192, 212(¶ 77) (Miss.2001)). The most serious of these three interests is the last. Barker, 407 U.S. at 532, 92 S.Ct. 2182. There must be an evidentiary demonstration of prejudice because the Court "will not infer prejudice to the defense out of the `clear blue.'" Murray, 967 So.2d at 1232(¶ 30).
¶ 17. In his brief, Muise claims that he was actually prejudiced by the delay because his co-indictee, Fladland, disappeared between Muise's arrest and his trial.[1] Thus, Fladland did not testify at the trial. In Barker, the Supreme Court stated that "[i]f witnesses die or disappear during the delay, the prejudice is obvious." Barker, 407 U.S. at 532, 92 S.Ct. 2182. However, a defendant's mere supposition that a missing witness would have given exonerating testimony does not establish prejudice. Gray v. State, 728 So.2d 36, 49-50 (¶¶ 44-45) (Miss.1998). The defendant cannot show prejudice with an allegation of exonerating testimony "when the possibility [of such] is insubstantial, speculative and premature." Id. at 50(¶ 45).
¶ 18. Muise asserts that due to Fladland's absence, he was unable to effectively pursue his defense that Fladland was actually the shooter. However, it is difficult to conceptualize how Muise's defense was impaired by Fladland's absence. Fladland was indicted as an accessory before the fact to Magrette's murder; if tried and found guilty, he would have been criminally liable as a principal. Miss.Code Ann. § 97-1-3 (Rev.2006). While we cannot know what Fladland's testimony would have been, it is substantially unlikely that Fladland would have admitted his own guilt of the indicted offense by testifying that he, and not Muise, was the shooter. It is more readily conceivable that Fladland instead would have either denied guilt or exercised his Fifth Amendment privilege against self-incrimination. On the basis of the record alone, there is little apparent prejudice to Muise from the disappearance of Fladland.

5. Conclusion
¶ 19. Though the record shows a substantial, unexplained delay in bringing *254 Muise to trial, no prejudice is apparent from the record. Considering the totality of the circumstances, there was no error so fundamental that it generates a miscarriage of justice. Therefore, we decline to recognize a plain error.
II. WHETHER MUISE WAS DENIED HIS RIGHT TO EFFECTIVE COUNSEL WHEN THE TRIAL COURT DENIED HIS MOTION FOR A CONTINUANCE IN ORDER TO SECURE MEDICAL RECORDS, EXPERT TESTIMONY, AND DEFENSE WITNESSES.
¶ 20. Muise moved for a continuance so that his defense counsel could further prepare for the trial. The trial court heard arguments at the pretrial hearing and denied the motion. On appeal, Muise contends that the denial of a continuance hindered the preparedness of counsel to the degree that it denied him the assistance of constitutionally effective counsel.
¶ 21. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Howell v. State, 989 So.2d 372, 382(¶ 27) (Miss.2008) (quoting Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Under the two-part Strickland test, the defendant has the burden to show: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense of the case. Id. There is a strong presumption that counsel's performance was reasonable. Id. The standard for evaluating the defendant's showing under the prejudice prong of the test is that prejudice is present if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (quoting Davis v. State, 743 So.2d 326, 334(¶ 5) (Miss.1999)). This is a probability sufficient to undermine confidence in the outcome of the proceedings. Id.
¶ 22. We first address the viability of Muise's claim that ineffective assistance of counsel resulted from the denial of a continuance. In Walker v. State, 671 So.2d 581, 591-92 (Miss.1995), the supreme court adjudicated Walker's direct appeal arguing error in the denial of a continuance. The court found the issue to be procedurally barred, but that notwithstanding the procedural bar, there was no error. Id. at 592. Later, Walker filed a motion for post-conviction relief, arguing that the denied continuance resulted in ineffective assistance of trial counsel. Walker v. State, 863 So.2d 1, 11(¶ 17) (Miss.2003). The supreme court found that not only did Walker fail to show that prejudice resulted from his trial counsel's actions, but also because the court had found no merit to his argument on the denial of a continuance, he could not demonstrate prejudice and establish a claim of ineffective assistance of counsel. Id. at 13(¶ 25). Therefore, we determine this issue with reference to the propriety of the trial court's determination that no continuance was warranted.
¶ 23. Muise claims that his counsel's performance was prejudicially deficient because counsel was unprepared for trial due to the trial court's denial of the motion for a continuance. In order to determine the merits of this argument, we first determine if Muise was entitled to a continuance. "[T]he decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be reversed unless the decision results in manifest injustice." Ross v. State, 954 So.2d 968, 1007(¶ 91) (Miss.2007). Muise requested a continuance in order to complete the following trial preparation: (1) locating and interviewing Fladland; (2) *255 serving a subpoena on Cherrie Mark Roach, who had moved to Texas; (3) obtaining Little's medical records concerning the prescription drugs she was taking on the night of the murder; and (4) obtaining funds to hire a medical expert to testify about drug interactions of those prescription drugs.
¶ 24. In denying the motion for a continuance, the trial court noted that Fladland had fled the jurisdiction of Harrison County and that locating him was not anticipated. Although Roach was anticipated to testify that he had sold Fladland the gun that was determined to have been used to kill Magrette, the trial court denied a continuance to subpoena Roach because both parties stipulated that Roach sold Fladland the gun. Also, the trial court found that no continuance was warranted to gather evidence with which to impeach Little about her medications because Muise could cross-examine Little about the effects of her medications on her ability to perceive the events.
¶ 25. We find that no manifest injustice resulted from the denial of a continuance. Muise makes much of the prejudice to his defense caused by the absence of Fladland. In the aggravated assault case of Cleveland v. State, 820 So.2d 37, 38(¶ 7) (Miss. Ct.App.2002), counsel sought a continuance to compel the attendance of a witness, Raymond Murrell, who would either admit or deny that he, not Cleveland, had shot the victim. If Murrell denied having shot the victim, defense counsel planned on calling witnesses to impeach Murrell with his prior inconsistent statements that he had shot the victim. Id. The trial court denied the continuance, and Cleveland appealed. Id. at 39(¶ 10).
¶ 26. This Court stated the requirement that:
[t]he refusal of a motion for a continuance on the ground of the absence of a witness will not be overturned on a motion for a new trial unless the witness, or his affidavit showing what his testimony would be, is offered on the hearing of the motion, or it is shown that it was impossible or impracticable to secure the attendance of the witness or to secure his affidavit.
Id. at (¶ 11) (quoting Hardiman v. State, 776 So.2d 723, 727(¶ 19) (Miss.Ct.App. 2000)). We affirmed the denial of a continuance because Cleveland had not submitted an affidavit showing what Murrell's testimony would be or showed that it was impossible or impractical to secure Murrell's attendance or affidavit. Id. We also identified three possible scenarios if Murrell had testified: (1) although unlikely, he might have admitted that he shot the victim; (2) he might have denied that he shot the victim; or (3) he might have invoked his Fifth Amendment privilege against self-incrimination. Id. at (¶ 16).
¶ 27. Muise did not attach Fladland's affidavit to his motion for a new trial, nor did he show that his securing his attendance or affidavit was impractical or impossible. We observe that at the pretrial motion hearing, the trial court recognized the improbability of securing Fladland's attendance. But as has already been discussed in our analysis of Issue I, it is far from certain that Fladland's testimony would have aided Muise's defense theory because to do so would have required Fladland to admit to committing the murder himself. Therefore, we find no manifest injustice resulted from the denial of a continuance to secure Fladland's attendance.
¶ 28. Nor did manifest injustice result from the denial of a continuance to secure the presence of Roach or to subpoena Little's medical records or obtain funds for an expert on her medications. The evidence that Roach sold Fladland the murder *256 weapon was admitted into evidence through a stipulation. Muise was able to adequately cross-examine Little about which of her prescription medications, including Xanax, Tylenol 3, and Ultram, that she had ingested on the day of the murder and about their effects on her ability to perceive the events. We find that no manifest injustice resulted from the inability of Muise's counsel to further prepare for this cross-examination by subpoenaing Little's medical records and obtaining funds to hire an expert witness.
¶ 29. No manifest injustice resulted from the denial of a continuance, and Muise has not shown a reasonable probability of a different outcome under Strickland. Having carefully reviewed the trial record concerning the deficiencies of which Muise complained, we further conclude that there is no indication that despite the relatively brief period of time counsel had to prepare for trial, the reasons cited by Muise rendered counsel so unprepared as to undermine our confidence in the outcome of the proceedings. This issue is without merit.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING AND BARNES, JJ., CONCUR IN RESULT ONLY.
NOTES
[1] Muise claims no prejudice from his incarceration between his arrest and his trial.