KING, C. J.,
 

 for the Court.
 

 ¶ 1. Cavin Earl Reed appeals his conviction of murder and sentence of life in the custody of the Mississippi Department of Corrections (MDOC) without the possibility of parole. Reed raises four assignments of error: (1) whether the evidence was legally sufficient; (2) whether the verdict is against the overwhelming weight of the evidence; (3) whether the trial court erred in sentencing Reed as a habitual offender; and (4) whether Reed’s constitutional right to a speedy trial was violated. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. During the early morning hours of August 3, 2006, Reed and his girlfriend, Angeline Lawanna Combs, got into an argument at her apartment located at the Kessler Bay Villa Apartments in Biloxi, Mississippi. As a result of the argument, Combs sustained two gunshot wounds and cuts from either being pushed against or trying to escape through a window in Combs’s bedroom. Reed placed Combs in the passenger seat of her car. The car, containing Combs’s body, was found abandoned on Interstate 110.
 

 ¶ 3. Aisha Carson, a neighbor, who heard the commotion and witnessed some of the altercation, contacted the Biloxi Police Department. When the police arrived
 
 *51
 
 at the Kessler Bay Villa Apartments, they were alerted to the broken window in an upstairs apartment. As Patrolman Michael Brennan approached the stairwell to Combs’s apartment, he observed several drops of blood leading to the apartment. Seeing no signs of forced entry at Combs’s apartment door, Patrolman Brennan knocked loudly on the door several times and announced that it was the police. After getting no response, Patrolman Brennan checked the doorknob and entered the unlocked door. The officer found two small children, later identified as Combs’s daughters, asleep on the sofa in the living room. Patrolman Brennan followed the droplets of blood and pieces of blood-smeared glass to the master bedroom, where it appeared that a disturbance had occurred.
 

 ¶ 4. While investigating, officers were told by a resident that Reed and Combs had left in Combs’s car. A description of Combs’s car was given to patrol officers on duty who began patrolling the area in an effort to locate the vehicle. While traveling south on Interstate 110, Officer Eugene Palmer spotted a vehicle that fit the description of Combs’s car parked on the shoulder on the northbound side of the Interstate 110 drawbridge that connects D’Iberville and Biloxi. Officer Palmer approached the car, and found Combs’s body slumped backwards in the front passenger seat; Combs’s body was covered in blood.
 

 ¶ 5. At that point, the authorities began a search for Reed. Investigator Michael Brown with the Biloxi Police Department went to the home of Reed’s mother, Pearlie Mae Reed, to inquire as to Reed’s whereabouts. While Investigator Brown was at Pearlie Mae’s home, Reed telephoned his mother. Reed agreed to turn himself in to the authorities if Investigator Brown would come and get him. During the call, deputies with the Harrison County Sheriffs Department arrived at Reed’s location and took him into custody.
 

 ¶ 6. After being taken into custody, Reed was read his
 
 Miranda
 
 rights. Reed signed a waiver of rights form and spoke with the authorities. During his interview, Reed described the events of the night to the authorities as he remembered them. Reed also informed the authorities of the location of the gun that he had used in the shooting.
 

 ¶ 7. During the February 2007 term of court, a Harrison County grand jury indicted Reed for murder. On March 20, 2008, Reed was tried and convicted of murder and sentenced as a habitual offender to life in the custody of the MDOC without the possibility of parole. Reed filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict (JNOV), which was denied. Aggrieved, Reed timely appeals.
 

 ANALYSIS
 

 I. Legal Sufficiency
 

 ¶8. Reed asserts that the State failed to prove that he acted with deliberate design to commit murder; therefore, he contends that at most he was guilty of manslaughter. Reed claims that when he shot Combs, he was acting in self-defense. Reed also contends that the trial court erred by not granting a directed verdict pursuant to
 
 Weathersby v. State,
 
 165 Miss., 207, 147 So. 481 (1933). Reed claimed that he was the only eyewitness to Combs’s death and relies on the
 
 Weathersby
 
 Rule, which provides that:
 

 [Wlhere the defendant or defendant’s witnesses are the only eyewitnesses to the homicide, then- version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the [Sjtate, or by the physical
 
 *52
 
 facts or by the facts of common knowledge.
 

 Id.
 
 at 208, 147 So. at 482.
 

 ¶ 9. Reed was indicted for murder pursuant to Mississippi Code Annotated section 97-3-19(l)(a) (Rev.2006).
 
 [1]
 
 Therefore, the State was required to prove that: (1) a person was killed without the authority of law, and (2) the killing was done with the deliberate design to effect the death of the person killed or of some other person.
 

 ¶ 10. The supreme court has previously stated that:
 

 [I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for a directed verdict or for [a] judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction. However, this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 

 Bush v. State,
 
 895 So.2d 836, 843(1116) (Miss.2005) (internal quotations omitted). If the evidence favors the defendant as to any element of the offense such that a reasonable juror could not find the defendant guilty beyond a reasonable doubt, then the motion for a JNOV should be granted. However, if on the other hand the evidence is such that a reasonable juror could reach a different conclusion on every element of the offense, then the evidence is deemed to be sufficient.
 
 Edwards v. State,
 
 469 So.2d 68, 70 (Miss.1985).
 

 ¶ 11. We find that there was sufficient evidence from which a jury might find Reed guilty of murder. Reed gave a videotaped statement, which was introduced at trial. Reed’s statement provided that Reed and Combs were watching a movie. After watching the movie for the second time, Reed went to the master bedroom at approximately 3:00 a.m. to smoke a cigarette and then go to bed. Combs followed Reed into the bedroom and began teasing him in a sexual manner. Because Combs would not engage in sexual intercourse, Reed left the bedroom in frustration and went to the living room. Having forgotten his cigarettes, Reed returned to the bedroom, but he found the door locked. Reed obtained a screwdriver and dismantled the door knob.
 

 ¶ 12. Reed told Combs he was going to get his cigarettes and leave. In response, Combs told him that only death would separate them and asked Reed if he remembered that she had two guns. Combs grabbed the screwdriver and lunged at Reed, cutting his finger. Reed started to leave, but Combs took a gun from a shoebox in the closet, placed it on the bed, and told Reed that he was not going anywhere. Shortly thereafter, Combs reached inside the closet again as if she was getting the second gun. Combs then turned toward Reed with one hand behind her back and the screwdriver in the other. Reed grabbed the first gun off the bed in order to put its safety on. At that time, Combs
 
 *53
 
 drew her hand from behind her back toward Reed acting like she was going to shoot Reed and said, “BOOM.” Reed claimed he instinctively fired one shot. However, when Combs lunged toward Reed with the screwdriver, he fired several more shots.
 

 ¶ 13. Reed stated that Combs then attempted to go out the bedroom window, but he pulled her back inside to take her to the hospital. On the way to the hospital, the car stopped and became inoperable. Reed got out the car to go for help, abandoning Combs. Reed hitched a ride to his nephew’s house to call for help. Reed stated that because there was no telephone available at the house, Reed took his nephew’s car to get help. However, while driving, the two front tires on the vehicle blew out, so he hitched a ride to his uncle’s house. He then telephoned his mother and his sister and explained what had happened. Reed stated that when he contacted his mother, Ms. Reed, she was already speaking to Investigator Brown about Reed’s whereabouts. Reed was arrested later that morning at his uncle’s home. Reed stated that because he was frustrated and had not taken his psychotropic medicine in several days before Combs attacked him, he snapped at that moment. He claimed that he did not recall exactly how many shots he fired after the first shot, and he did not remember where Combs was shot.
 

 ¶ 14. Carrissia Martin, a long-time acquaintance and friend of both Reed and Combs, testified that Reed came to her apartment twice, prior to the shooting, distraught over his relationship with Combs. Reed came to Martin’s apartment two weeks prior to Combs’s death and two days prior to Combs’s death. He stated that he was sick and tried of Combs cheating on him. Martin testified that during the second visit, Reed told her he was going to kill Combs.
 

 ¶ 15. Carson testified that at approximately 4:00 a.m., she heard a commotion coming from the bedroom in Combs’s apartment. Carson telephoned the police. During the call, Carson heard noise coming from' the balcony area, so she stepped outside onto her balcony. While standing on the balcony, Carson observed Combs being pushed in and out of her bedroom window a couple of times. Carson also testified that she heard Combs say, “I give in,” a couple of times. Shortly thereafter, Carson saw Combs’s car leaving the apartment complex.
 

 ¶ 16. Crime scene investigator, Michael Reid, recovered three Winchester .380 caliber casings in the master bedroom, one bullet on the floor just under the broken window in the master bedroom, a bullet fragment in the northwest corner of the bedroom, a bullet in the west wall of the master bedroom, a bullet in the back of the front door, four 9mm bullets underneath the mattress, and a shoebox on the top shelf inside the closet that contained a Makarov 9mm semi-automatic handgun. Investigator Reid testified that he also found a bullet in the living room door and a brass jacket of a bullet on the floor in front of the television in the living room.
 

 ¶ 17. The State also presented the results of Combs’s autopsy, which was performed by Dr. Paul McGarry, a forensic pathologist. Dr. McGarry testified that Combs had cut wounds on the soles of her feet, on the back of her wrists, and fingernails. Combs also had a bruise on the front of each shoulder, a one and one-half inch abrasion on her left knee, and a smaller abrasion on her left ankle where the skin was rubbed away as if she had fallen on a rough surface. Dr. McGarry stated that Combs sustained two gunshot wounds. “Wound A” was described as hav
 
 *54
 
 ing been made by a bullet that entered Combs’s right cheek, traveled upward and backward, slightly rightward, and came out at the base of Combs’s ear. “Wound B” was described as having been made by a bullet that entered the back of Combs’s shoulder, went upward, came out the top of her shoulder, reentered her neck, and then exited Combs’s mouth. Dr. McGarry testified that the entry of Wound B indicated that the back of Combs’s right shoulder was toward the shooter. Dr. McGarry also stated that, although Wound B was considered more life threatening and was likely the cause of death, had Combs obtained proper medical treatment within an hour or sooner, it would have been possible to control Combs’s bleeding.
 

 ¶ 18. Reed’s version of the events is contradicted by the testimony of others and the physical evidence. Thus, a reasonable juror could have found beyond a reasonable doubt that Reed did not act in self-defense, but acted with deliberate design to commit murder. Therefore, this issue is without merit.
 

 II. Weight of the Evidence
 

 ¶ 19. Reed argues that his murder conviction is against the overwhelming weight of the evidence.
 

 ¶ 20. “This Court will ‘only disturb a jury verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.’ ”
 
 Wilson v. State,
 
 956 So.2d 1044, 1049(¶ 19) (Miss.Ct.App.2007). The Court stated that:
 

 In determining whether a jury verdict is against the overwhelming weight of the evidence, the court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.... Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict.
 

 Boyd v. State,
 
 754 So.2d 586, 590(¶ 11) (Miss.Ct.App.2000) (internal citations omitted).
 

 ¶ 21. Based on the evidence contained in the record before this Court, we find that the jury verdict is not against the overwhelming weight of the evidence. We have detailed the relevant evidence in the prior discussion on the sufficiency of the evidence; therefore, we will not repeat it here.
 

 ¶ 22. Reed chose to rest his case without calling any witnesses on his behalf. The only evidence presented at trial as to Reed’s theory of self-defense and his belief that he was at most guilty of manslaughter was his statement to the authorities. The jury was allowed to view the videotape during the trial. The jury was instructed on murder, manslaughter, and self-defense; however, the jury found Reed guilty of murder. Viewing the evidence in the light most favorable to the verdict, we find that the jury’s verdict is not against the overwhelming weight of the evidence. Therefore, this issue is without merit.
 

 III. Habitual Offender
 

 ¶ 23. Reed argues that the State failed to prove that he had been sentenced to and actually served separate terms of one year or more on each of his prior felony convictions; therefore, he contends the trial court committed error in sentencing him as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Rev.2007).
 

 ¶ 24. Section 99-19-83 of the Mississippi Code Annotated, one of this state’s two habitual offender statutes, provides:
 

 Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal
 
 *55
 
 crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
 

 (Emphasis added).
 

 ¶ 25. On March 12, 2008, the State filed a motion to amend the indictment against Reed to allege habitual offender status pursuant to section 99-19-83. On March 13, 2008, the trial court conducted a hearing to determine whether to amend the indictment to allege that Reed was a habitual offender. During this hearing, the State offered three documents in support of its request to amend the indictment.
 

 ¶ 26. The first document was an order from the Second Judicial District of the Circuit Court of Harrison County, in Cause No.2000-86, dated October 2, 2000, indicating that Reed had entered a plea of guilty to a charge of possession of a controlled substance. Upon the State’s recommendation, the trial judge sentenced Reed to three years, but the judge reduced that to time served, followed by three years of probation.
 

 ¶ 27. The second document, styled as Post-Release Supervision from the Second Judicial District of the Circuit Court of Harrison County, dated April 21, 2003, indicated that Reed had entered a plea of guilty to the crime of simple assault upon a law enforcement officer in Cause No.2003-18 and was sentenced to serve a term of five years in the custody of the MDOC suspended for time served, which was approximately nine and a half months.
 

 ¶ 28. The third document was an order from the Second Judicial District of the Circuit Court of Harrison County dated January 8, 2004, revoking Reed’s probation on the charge of simple assault upon a law enforcement officer. The Circuit Court of Harrison County sentenced Reed to serve five years in the custody of the MDOC.
 

 ¶ 29. At the conclusion of the hearing, the trial court granted the State’s motion to amend the indictment to allege that Reed was a habitual offender pursuant to section 99-19-83. Deliberating after the trial, the jury returned a verdict of guilty of murder, which the trial court accepted and proceeded to conduct a sentencing hearing. The trial court inquired whether the State had the supporting documents to establish habitual offender status as alleged in the amended indictment. The prosecutor responded yes, and then stated:
 

 [THE PROSECUTOR]: That on October 2, of 2000, Mr. Reed was convicted in the Circuit Court of Harrison County Second Judicial District, Cause Number 2000-86, a felony possession of a controlled substance. Mr. Reed was sentenced to a sentence of three years. That three years was suspended for time served. We have calculated that time he spent in jail as 16 months and 15 days.
 

 Then also in April 2003 Mr. Reed was convicted in the Circuit Court of Harrison County Second Judicial District in Cause Number 2003-18 of the felony of simple assault on a law enforcement officer. And Mr. Reed was sentenced to a term of incarceration of five years.
 

 ¶ 30. The trial court received no further evidence, and it immediately sentenced Reed, as a habitual felon, to a mandatory life sentence, without parole, for the crime of murder. Reed offered no objection to
 
 *56
 
 the proof offered during the sentencing hearing or to the sentence.
 

 ¶ 31. On March 21, 2008, Reed filed a motion for a new trial or, alternatively, for a JNOV. While that motion raised several issues, it did not raise an issue as to the lack of proof to support habitual offender status pursuant to Mississippi Code Annotated section 99-19-83. As a general rule, this Court does not address issues that were not first submitted to the trial court. However, under the Mississippi Rules of Appellate Procedure, this Court retains the authority to address as plain error, matters not otherwise properly before the Court. M.R.A.P. 28(a)(3);
 
 Smith v. State,
 
 984 So.2d 295, 307(¶ 43) (Miss.Ct.App.2007). Because Reed argues the illegality of his sentence, this Court deems it appropriate to address this matter as plain error.
 

 ¶ 32. We find that the trial court erred in sentencing Reed as a habitual offender pursuant to section 99-19-83, because the State failed to prove that Reed had served two separate terms of at least one year in a state or federal penal institution. However, we find this error to be harmless.
 

 ¶ 33. We find that the evidence was sufficient to find Reed to be a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev.2007). Section 99-19-81 differs from section 99-19-83 in that it merely requires proof of conviction of two prior felony offenses, and it does not require proof that the time was actually served. Section 99-19-81 mandates that a person convicted as a habitual offender receives the maximum sentence, which shall not be subject to reduction, suspension, or parole. Mississippi Code Annotated section 97-3-21 (Rev.2006) provides a mandatory life sentence in a non-capital offense case for a conviction of murder. When that sentence is enhanced pursuant to section 99-19-81, it becomes a life sentence without the possibility of suspension, reduction, or parole. This is the sentence imposed upon Reed. Where a trial court reaches the correct result, even if for the wrong reason, this Court may still affirm its actions.
 
 McClurg v. State,
 
 870 So.2d 681, 682(¶ 6) (Miss.Ct.App.2004). Therefore, we find that this assignment of error is without merit.
 

 IV. Speedy Trial
 

 ¶ 34. Reed was arrested on August 3, 2006, and remained incarcerated until his trial on March 18, 2008. Reed argues that his constitutional right to a speedy trial was violated because more than twenty months passed between his arrest and trial. Reed contends that there was a 593-day delay in bringing him to trial, only 109 days of which are attributable to him.
 

 ¶ 35. To determine if Reed’s constitutional right to a speedy trial has been violated, this Court applies a four-factor test developed by the United States Supreme Court. “First, the length of delay is considered; secondly, the reasons for the delay; thirdly], whether the defendant asserted his right to a speedy trial; and last[ly], whether the defense suffered any prejudice from the delay.”
 
 Manix v. State,
 
 895 So.2d 167, 175-76(¶ 16) (Miss.2005) (citing
 
 Barker v. Wingo,
 
 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). A delay of more than eight months is considered presumptively prejudicial; thus, it triggers an inquiry into the other three factors. However, this Court considers the totality of the circumstances when determining whether there was a speedy-trial violation.
 
 Muise v. State,
 
 997 So.2d 248, 250(¶ 8) (Miss.Ct.App.2008).
 

 ¶ 36. In this case, the record indicates that Reed did assert a demand for a
 
 *57
 
 speedy trial, but he failed to obtain a pretrial ruling on his motion for a speedy trial. The supreme court has held that:
 

 [A] party is obligated to seek a ruling on an objection or motion. A party making a motion must follow up that action by bringing it to the attention of the judge and requesting a hearing upon it. The movant bears the responsibility to obtain a ruling from the court on motions filed by him....
 

 Craft v. State,
 
 832 So.2d 467, 471(¶10) (Miss.2002) (internal citations and quotations omitted). “Thus, though a defendant has made a written speedy-trial motion, the defendant’s failure to bring the motion to the attention of the trial court and request a hearing results in a waiver of the issue for appeal.”
 
 Muise,
 
 997 So.2d at 252(¶ 10).
 

 ¶ 37. The record indicates that on August 21, 2006, Reed filed a motion styled “Demand for Speedy Trial.” On March 11, 2008, Reed filed a motion to dismiss the charges pending against him because his constitutional right to a speedy trial was violated. However, Reed neither brought his motion to the attention of the trial court, nor did he request a hearing to obtain a ruling on whether his constitutional rights had been violated according to the
 
 Barker
 
 analysis. Therefore, Reed is procedurally barred from raising this issue for the first time on appeal.
 

 CONCLUSION
 

 ¶ 38. There exists sufficient contradictory evidence to Reed’s version of the events of that night from which a reasonable juror could find that Reed did not act in self-defense, but he intended to cause Comb’s death. Examining the evidence in the light consistent with the verdict, we do not find that the verdict is against the overwhelming weight of the evidence. This Court finds that the trial court lacked sufficient evidence to sentence Reed as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83, but it had sufficient evidence to sentence Reed as a habitual offender pursuant to section 99-19-81. However, because the resulting sentence, whether under section 99-19-81 or section 99-19-83, would be the same, this Court finds the error to be harmless. Based on the foregoing analysis, we affirm the judgment of the trial court.
 

 ¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Section 97 — 3—19(1 )(a) states: "The killing of a human being without the authority of law by any means or in any manner shall be murder ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being.”